COTTRELL & SONS *v.* MERCHANTS & MECHANICS BANK.

1. The retention of title by the vendor in a written contract of sale of personal property with the condition affixed that the title is to remain in the vendor until the purchase price shall have been paid, though the instrument be not recorded within the time prescribed by law, will prevail over the lien of a subsequent mortgage on the same property, executed by the conditional vendee to a creditor who gives credit and takes the mortgage without notice of the vendor's title, the mortgage also not being recorded in time.

2. If the contract between the parties as expressed in the writing be substantially a contract of conditional sale, that the purchase money is denominated " hire " and divided into sums payable at various periods throughout the term of credit, will not render the transaction one of bailment for hire and subject it to the law of bailments instead of the law of conditional sales.

3. Under the foregoing rulings, the question of notice to the defendant as purchaser at the sale made under a foreclosure of the mortgage is immaterial. The same is true of other questions raised in the record.

April 4, 1892.   Argued at the last term.

Lien. Title. Conditional sale. Bailment. Mortgage. Record. Notice. Before Judge MARTIN. Muscogee superior court. May term, 1891.

Complaint by Cottrell & Sons against the bank, to recover a printing-press.    The verdict was for the defendant, and the plaintiffs' motion for a new trial was overruled.    It appears that the press was delivered to the Enquirer-Sun Publishing Co. by the plaintiffs under a written contract dated January 18, 1888, executed by that company, one Sullivan signing as a witness at execution and delivery, for the plaintiffs.    This contract was not recorded.    On May 8, 1888, the publishing company made a mortgage on the press to the bank, which mortgage was recorded January 9, 1889.    There was conflict of evidence as to whether this mortgage was taken without notice of the contract with the plaintiffs.    Under foreclosure of the mortgage the press was bought by the bank, and at the sheriff's sale the plaintiffs' attorney gave notice of their claim of title.

The contract above referred to names the plaintiffs as parties of first part, and the publishing company as party of the second part.    It states that the parties of the first part have agreed to let to hire, and "do hereby let to hire" to the party of the second part, for the term of one year from date, the property, describing it, for the consideration of $2,500 with interest, which the party of the second part is to pay as follows: $500 cash, $300 three months from date with interest at six per cent. per annum, and $1,700 a year from date with interest from date at the same rate; that it is further agreed between the parties that if default be made by the publishing company in the payment of any one or more of the aforesaid sums or installments of hire, it shall be lawful for plaintiffs to re-enter into possession of the press, and it is expressly agreed that they may repossess, remove, keep and enjoy the press as though the agreement of hire had never been entered into.    The press to be put into the printing office of the publishing company and there kept and used, and not removed

therefrom without .the wr:tten consent of plaintiffs, and at the expiration of said term of hiring, to be given up and possession thereof surrendered by the publishing company to plaintiffs in. as good condition as it is now, reasonable wear and tear excepted. The publishing company agrees to keep the press insured in companies to be approved by plaintiffs, the policy or policies to be in their name and in a sum sufficient to cover the whole of the hire now unpaid, to wit $2,000 with interest, and in case the publishing company fail to take out the insurance, plaintiffs may have the press insured as they see fit, the charges and expenses thereof to be a lien on the press in addition to the aforesaid hire, and to be added to and made payable with the first installment thereof. Plaintiffs agree that the publishing company, on paying the above specified installments and performing the covenants aforesaid, shall peaceably and quietly have, hold and enjoy the press for the said term ; and further agree and promise, that if the publishing company shall keep the covenants made, and make no default in the payment of any one or more of the installments of hire as the same shall fall due and become payable, and this indenture shall not be sooner determined by mutual consent or otherwise, they will execute and deliver to the publishing company a bill of sale for the press, "the consideration whereof shall be the amount of the above mentioned installments of hire."

In the 4th and 11th grounds for a new trial the plaintiffs assign error upon the court construing this contract as a conditional bill of sale and not a contract of bailment, and refusing to charge, as requested, that if the property was delivered and received by the publishing company in pursuance of this contract, and the installments for hire had not been paid as therein stipulated, the plaintiffs would be entitled to recover possession of the property, notwithstanding the bank subsequently

bought it upon a valuable consideration and without notice of the contract.

In the 9th and 10th grounds error is assigned on the refusal of the court to charge the following:

"If you find that the contract of conditional sale between the plaintiffs and the Enquirer-Sun Publishing Company was entered into prior to the giving of the mortgage by the said publishing company to the Merchants & Mechanics Bank, and you further find that said mortgage was not recorded within the thirty days limited by the statute, then the court charges you that the lien retained by the conditional sale in favor of the plaintiff, is superior to and will prevail over the lien created by the mortgage.

"A mortgagee who fails to record a mortgage within the time limited by statute, does not occupy the status of a *bona fide* purchaser for value as against the rights of parties whose liens may have accrued prior to the actual record of the mortgage; as between a junior mortgage not recorded within the time prescribed by law, and a prior unrecorded mortgage or contract of conditional sale, the equities are equal, and the elder must prevail over the junior mortgage, upon the familiar maxim that where equities are equal that which is prior in time is prior in right."

The 12th ground alleges error in the following charge: "Now, as between Cottrell & Sons and the Enquirer-Sun Publishing Company, it mattered not whether this contract was attested according as mortgages on personal property were required to be attested, or not, that is, their being attested in the presence of witnesses or a witness authorized by law to attest these papers; and it matters not whether it had been recorded within the thirty days or any other time; it was good as between those persons, the seller and the Enquirer-Sun Publishing Company. Now, how does it affect third persons?

As to third persons, if it has not been attested as the law requires and recorded as the law requires, then the lien, although it would be good between the parties themselves, would not be good as to third persons, unless those third persons dealing with the Enquirer-Sun Publishing Company in the sale of the same, had actual knowledge that this title did remain in them. Now if they knew it, knew that notwithstanding the paper had not been attested according to law, had not been recorded according to law, yet if they knew that this press did not belong to the Enquirer-Sun Publishing Company but belonged to Cottrell & Sons at the time that this mortgage was made, then it would affect them and their mortgage would be subject to the claim of Cottrell & Sons."

Other grounds complain of the following instructions in the charge: " If, after considering the testimony in this case, you believe that the defendant, the Merchants & Mechanics Bank, purchased this press under a sale, the foreclosure of that mortgage, and that they did it without any knowledge of this prior claim of the plaintiffs for the purchase money, and that the title was still in them, why then, gentlemen of the jury, you would not be authorized to find for the plaintiffs against them. But if, on the other hand, you believe that they did take it with notice of this prior claim, that the plaintiffs held the title to it, then you would be authorized to find for the plaintiffs against the defendant the property in dispute.

" If the plaintiff, Cottrell, sold to the Enquirer-Sun Publishing Company this press, and reserved the title in that press, then as between them and the Enquirer-Sun Publishing Company no title had passed, and the title would still be in Cottrell & Sons. If they failed to have the bill of sale, the instrument of writing, agreement reserving this title, executed as the law required,

that is witnessed, and failed to have it recorded, then their claim would not affect a third person who had no notice of the claim, that is of the reservation of title, not the debt. The plaintiff may have had a debt against the Enquirer-Sun Publishing Company and the defendant may have known they held it against the company, but unless the bank knew they had a lien or had a reservation of title, then they would not be affected by it. On the other hand, if they knew that they had a reservation of title to this property mortgaged, the title being in Cottrell & Sons, then they would be bound by it, and their mortgage would be taken subject to this reservation of title. If they did not know it, it does not make any difference if they did know they owed them a debt, then they would not be."

LITTLE & WIMBISH, for plaintiffs.

PEABODY, BRANNON & HATCHER, for defendant.

SIMMONS, Justice.

1. The vital point of the controversy was, which of the parties was entitled to priority. The plaintiffs in their contract of sale reserved title to the press until the purchase money should be fully paid, and the defendant bank was a subsequent mortgagee thereof without notice, as the jury found, of the reservation of title. The plaintiffs' contract, being attested by one unofficial witness, was capable of being probated so as to prepare it for record, but was not recorded as required by the statute; the defendant's mortgage was likewise not recorded within thirty days as the statute requires. The substance of the plaintiffs' contention, as embodied in their requests to charge, involves two propositions: first, that they occupy as good a position as prior mortgagees with an unrecorded mortgage; second, that the defendant, by failing to record its mortgage in time, lost priority over the title reserved in the contract of sale.

v 89-33

The defendant replies that plaintiffs do not stand on the same ground as first mortgagees, and that their contract, being not fully prepared for record and not recorded at all, is not valid as against third parties without notice. Now do the plaintiffs stand on equal footing with first mortgagees ? Certainly they have as much natural right to protection. They kept hold of title, the property was theirs, while the mortgagee has no title but only a lien on the property. In some cases, claims for purchase money are higher than those of mere mortgagees. A valid claim for purchase money will subject a homestead, where an ordinary mortgage would be unavailing. Judgment for the purchase money of land held under bond for titles is superior to all other liens and encumbrances. Code, §3654. And the anomalous right of stoppage *in transitu* exists for the special protection of unpaid vendors. So it is no strain to say that, in equity at least, a vendor reserving title is on as high a plane as a mortgagee advancing money on faith of the property. But how does he stand in regard to the registry statutes ? The statute touching conditional sales is as follows : " Whenever personal property is sold and delivered with the condition affixed to the sale, that the title thereto is to remain in vender of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as is now provided by existing laws for the execution and attestation of mortgages on personal property: Provided, nevertheless, that, as between the parties themselves, the contract as made by them shall be valid, and may be enforced whether evidenced in writing or not. The existing statutes and laws of this State in relation

to the registration and record of mortgages on personal property shall apply to and affect all conditional sales of personal property as defined in this section." Code, §1955(a). The language of the last sentence quoted plainly involves or implies that the effect of failure to record the contract is the same as in failing to record a chattel mortgage. *Morton* v. *The Frick Co.*, 87 *Ga.* 232. It follows that the junior mortgagee, to retain priority, must have recorded his mortgage in time. *Myers* v. *Picquet*, 61 *Ga.* 260. From the report of that case it does not appear whether the mortgaged property was real or personal; but there is no difference between the two in the statute or in principle, so far as failing to record is concerned. It may be said that the object of record is to notify subsequent purchasers or creditors of the prior claim, and thus save them from being misled by the appearance of ownership resulting from possession; that the plaintiffs, by failing to record, put it in the power of the party in possession to effect a fraud, and therefore they ought to bear the loss. This reasoning applies as well to mortgagees, who in Georgia usually leave the mortgagor in possession, as to vendors by conditional sale. According to the decision last cited, the protection of the later mortgagee is conditioned upon his recording in time. His protection is absolute and unquestionable upon complying with that condition. The justice of requiring it is apparent. The first mortgagee has the best natural right; but by neglecting to record, he becomes liable to lose the advantage of priority in time. The second mortgagee then gets the advantage of being without notice, but by neglecting to record in time, he becomes liable to lose his advantage as against all earlier liens. Where both parties fail to record, both are lacking in the diligence required by law as a condition for their protection. Neither can claim a better right because the other neg-

lected to record. The law puts them on precisely equal terms in this respect. Neither having complied with the requirement to register, they are left where they would have stood regardless of the registry statutes. Consequently the first in time must prevail. The same considerations in justice apply to the case of a vendor reserving title; and it suffices to say that the statute manifestly intends to put him on the same ground as a mortgagee of personalty.

In *Steen* v. *Harris*, 81 *Ga.* 681, a piano had been sold conditionally and the contract not recorded. It was levied on under an attachment by a creditor whose debt was made after the conditional sale had been rescinded by agreement, and not on the faith of the property. The rescission was executed in part at least before the levy, though possession remained in the vendee. Thus the rescission terminated the relation of conditional vendor and vendee before the attaching creditor levied on the property. It was held that a verdict finding the property not subject was warranted by the evidence, and the court erred in granting a new trial. It was also held that the conditional element of the sale would count for nothing as against the attaching creditor, because the contract was not recorded. Likewise, in *Gartrell* v. *Clay*, 81 *Ga.* 327, it was held, where property was sold conditionally, without recording the contract, to a tenant, and, being kept upon the rented premises, was levied on and sold under distress warrant for the rent, that a verdict against the vendor, in an action of trover by him against the landlord, was demanded by the evidence. These decisions do not conflict with our ruling in the present case. In cases like that of an attaching creditor or a landlord, he would have a full and prevailing lien upon performing the essential requisites therefor. By regularly pursuing his remedy to the last step, he would defeat the conditional

vendor who had failed to record his reservation of title. On the attaching creditor or the landlord there is no duty to record. The levy would be notice enough, if any be necessary, to the whole world. But here the case is very different. The mortgagee has neglected one vital step in his progress towards a successful assertion of his lien as against the vendor reserving title. The mandate of the statute requiring record has been disregarded by both parties. The contest is between two secret liens, of which the earlier in time is the stronger in right. Another important distinction lies in the different origin of the liens. The attaching creditor, and the landlord, each has a lien arising by operation of law, but the mortgagee's lien arises by contract. The code, §1957, provides: " Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or obtained, or purchases made prior to the actual record of the mortgage. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded mortgage, or the purchaser has the like notice, then the lien of the older mortgage shall be held good against them." Under this section it has been held that the lien of a mortgage rests on the contract, and not on the foreclosure, and an unrecorded mortgage, senior in date to a judgment lien, will be postponed thereto, although the judgment creditor have actual notice of the mortgage and the mortgage be foreclosed before the judgment was obtained. *Andrews* v. *Mathews*, 59 *Ga.* 466; *Richards* v. *Myers*, 63 *Ga.* 762; *New England Co.* v. *Ober*, 84 *Ga.* 294. The doctrine established by these cases is, that a junior lien by operation of law will take precedence of an older unrecorded mortgage lien, though actual notice of the latter be had by the holder of the junior lien. Consequently the attaching creditor, or the landlord, would

take priority over the conditional vendor who failed to record, the latter having a lien by contract and being placed by the statute on the same footing as a mortgagee with respect to the matter of record. But where both liens rest on contract, as in this case, actual notice would defeat the later lien whether recorded or not. And by the ruling in *Myers* v. *Piequet, supra,* failure by the second mortgagee to record is as fatal to his claim of priority as actual notice. The section of the code last cited provides or implies that, if the younger contract lien was taken *without notice,* it would prevail over a prior unrecorded mortgage. But the generality of this is qualified by the requirement that mortgages shall be recorded, and by *Myers* v. *Picquet,* to the effect that if the younger contract lien is itself an unrecorded mortgage, it must yield to the elder mortgage.

The court erred in not charging the written requests set out in the 9th and 10th grounds of the motion, or something of substantially the same import.

It appears from what has just been said that the charge complained of in the 12th ground of the motion was incorrect. In substance the jury were instructed that, if the plaintiffs' contract was not attested and recorded as the law requires, their reservation of title, although good as between the parties themselves, would not be good as to third persons, unless those third persons had actual knowledge that the title remained in the plaintiffs. So far as attestation is concerned, there could be no doubt that the contract was capable of being made recordable, by proving it by the subscribing witness before one of the officers named in the statute. Code, §1955; *Nichols* v. *Hampton,* 46 *Ga.* 253. But apart from the question of attestation, the charge complained of made the recording of the contract an indispensable condition of its validity against third persons who had no notice. This plainly conflicts with the provisions of law already discussed, the conclusion being

that the later mortgagee, though without notice of the prior claim, by failing to record in time, suffered the advantage of want of notice to slip away, thus losing the security which diligence in recording would have made secure even against the plaintiffs' title.

2. The substance of the contract between the plaintiffs and the publishing company is correctly stated in the official report preceding this opinion. The plaintiffs requested the court to construe it as a contract of bailment; but the court would not, and pronounced it a contract of conditional sale. Exceptions were taken to these rulings, which are set out in the 4th and 11th grounds of the motion for new trial. That the court construed the contract correctly is not debatable, the same question having been decided in *Hays* v. *Jordan*, 85 *Ga.* 741. That case, in connection with the second head-note in this, will fully show the law here applicable.

3. Under the charge touching the effect of the notice given at the foreclosure sale just before the defendant bought in the property, it seems the jury ought to have found for the plaintiffs. There was a clear admission, and no denial, by the defendant of notice at that sale. The evidence was all one way to the effect that such notice was given. Perhaps the plaintiffs might well object that this charge opened up a question not raised in the evidence. But in view of the controlling principle of priority, the question of this notice was immaterial. The defendant, in buying at its own sale, could get no better standing against the plaintiffs than it had before. Therefore, under the facts and law of this case, the charge complained of, though wholly inappropriate, may be treated as of no considerable materiality.

Having determined that the plaintiffs' title, on the uncontested facts of the case, must prevail over the defendant's mortgage, it is manifestly unnecessary to discuss the other questions made in the record.

*Judgment reversed.*