4757, 4758. TREMERE *v.* BARFIELD; and *vice versa.*

1. A vendee of personal property executed an instrument promising to pay the purchase-price, and reciting that, in order to secure the same, "I hereby bargain, sell, and convey unto the payees of this note, their heirs and assigns, the following property, which is expressly to be my individual property, free from any lien whatever;" describing the property and further reciting that, in case of a failure to pay the indebtedness at maturity, the payees would have the right to take possession of the property and sell it at public outcry and apply the proceeds to the indebtedness. *Held,* that the instrument was a bill of sale, conveying title, and not a mortgage.

2. Where personal property is sold, with the condition affixed to the sale that title is to remain in the vendor until the purchase-money is paid, the reservation of title must be in writing and recorded within thirty days from the date of its execution, in order to be valid against a third person who, without actual notice of the reservation of title, parts with

money or other thing of value upon the faith of the vendee's apparent unconditional ownership of the property, and in consideration therefor receives from the vendee a bill of sale to the property to secure the debt, and records it in the manner prescribed by law. One who, in consideration of the execution of such a bill of sale, surrenders to the vendee a valid mortgage on other property, and cancels the debt evidenced thereby, is a third person, within the meaning of section 3318 of the Civil Code.

DECIDED JUNE 10, 1913.

Trover; from city court of Valdosta—Judge Cranford. January 22, 1913.

*J. F. McCall, Whitaker & Dukes,* for plaintiff.

*J. R. Walker, Dan. R. Bruce,* for defendant.

POTTLE, J. Cooper purchased from Tremere two mules and executed to the vendor a note and mortgage, due in October, 1912, to secure the purchase-price. Some time after the execution of this mortgage Cooper sold the mules without the consent of Tremere. On December 5th, 1911, Cooper bought two mules from Barfield and executed a note for the purchase-price, containing a reservation of title in Barfield until payment of the purchase-money. This note was properly executed and recorded in Lowndes county on December 13, 1911, and was rerecorded in Brooks county on March 11, 1912. On December 6, 1911, Cooper executed to Tremere an instrument in which he promised to pay the purchase-price of the two mules which he had bought from Tremere; and, to secure the payment of the note, it was recited in the instrument that the maker agreed to "bargain, sell, and convey unto the payees of this note, their heirs and assigns, the following property, which is expressly to be my individual property, free from any lien whatever." Then followed a description of the two mules which Cooper had bought from Barfield, and also of other property. It was further recited in the instrument that, in case of failure to pay the debt at maturity, the payee was authorized to take possession of the property and sell it at public outcry and apply the proceeds of the sale, first, to the payment of the indebtedness and the cost of sale, the balance to be held subject to the order of the debtor. This instrument was properly attested, and was recorded on December 8, 1911, in Berrien county, and was rerecorded in Brooks county on March 9, 1912. In consideration of the execution and delivery of this instrument, Tremere surrendered to Cooper for cancellation the note and mortgage which Cooper had executed to secure the

payment of the purchase-price of the two mules which he had purchased from Tremere. At the time of the execution and delivery of the second instrument to Tremere, he had no actual notice of Barfield's claim to the mules therein described. It seems, from the evidence, that, after the execution of this paper, Cooper moved to Brooks county, and, while there, the mules which had been purchased from Barfield were levied on by the sheriff of Brooks county under a fi. fa. in favor of one of Cooper's creditors; and that Barfield filed a claim to the mules, gave bond, and took possession of them. After this was done, Tremere brought trover against Barfield, and upon the trial of the trover case the foregoing facts appeared. The judge directed a verdict in favor of Barfield, and Tremere excepted. Barfield filed a cross-bill of exceptions, complaining of the refusal of the court to exclude from the evidence the paper executed by Cooper to Tremere on December 6, 1911, over the objection that this paper was only a mortgage and did not convey title to the property therein described. Two questions are presented by the record: (1) whether the instrument relied upon by Tremere to defeat Barfield's claim of title was a mortgage or bill of sale, and (2) whether, if it was a bill of sale, Tremere is entitled to priority over Barfield because the bill of sale was properly recorded in Berrien county and Barfield's reservation of title was not recorded in that county.

1. The decision in *Brice* v. *Lane,* 90 *Ga.* 294 (15 S. E. 823), settles the question of the character of the instrument relied on by Tremere, adversely to Barfield's contention. In that case an instrument in almost the identical language of the one now involved was held to be a deed passing title to the grantee. That decision is conclusive of the question. See, also, *Walker* v. *Bank of Quitman,* 100 *Ga.* 88 (26 S. E. 84).

2. The evidence is undisputed that Cooper resided in Berrien county at the time of the execution of the bill of sale to Tremere; and, therefore, the sole question under the evidence is, whether or not Tremere's diligence in promptly recording his bill of sale in Berrien county entitles him to priority over Barfield, who has never recorded his reservation of title in the county in which the vendee resided at the time of the execution of the instrument. Section 3318 of the Civil Code is as follows: "Whenever personal property is sold and delivered with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property

until the purchase-price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves, the contract as made by them shall be valid and may be enforced, whether evidenced in writing or not." Section 3319 provides: "Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages." Hence a seller of personal property, who reserves title in writing until the purchase-money has been paid, but who fails to properly record the reservation of title, loses his right to enforce his reservation of title against third persons who in good faith part with money or other thing of value upon the faith of the apparent unconditional ownership of the property by the vendee, and without actual or constructive notice of the vendor's reservation of title. As to all such persons, the vendee is to be treated as having the absolute unconditional title to the property; but as between the parties themselves and persons who have notice the reservation of title is good whether recorded or not. *Hill* v. *Ludden,* 113 *Ga.* 320 (38 S. E. 752). In order, however, for third persons to acquire priority over a vendor who has failed to record his reservation of title, it must appear that such person has parted with something of value on the faith of the vendee's apparent ownership of the property. A judgment creditor who obtained his judgment before the conditional sale was made is not a third person within the meaning of the statute, and, as to him, the reservation of title need not be recorded. *American Law Book Co.* v. *Brunswick Crosstie & Creosoting Co.,* ante, 259 (77 S. E. 104), and citations. Where a holder of a mortgage or bill of sale, junior in date to the execution of a note reserving title in the vendor, claims priority over the vendor, it must appear that the holder of the junior paper has had it properly recorded, and that he had no notice, actual or constructive, of the reservation of title. The recording acts were passed for the benefit of the diligent. If neither paper is recorded and there is no actual notice, the holders are left where they would have stood regardless of the registry statute; consequently the paper oldest in date would prevail. This rule applies to the case of a ven-

dor reserving title, because the statute puts him upon the same ground as a mortgagee of personalty. *Cottrell* v. *Merchants & Mechanics Bank,* 89 *Ga.* 508 (15 S. E. 944). If Barfield had recorded his reservation of title in Berrien county within thirty days, he would have obtained priority over all liens created after the date of the execution of the contract of conditional sale, whether executed. before or after its record. Or, if Tremere had failed to properly record his mortgage in Berrien county, or, if he had had actual notice of Barfield's claim, the latter would have been entitled to prevail. But, by the prompt record of his bill of sale, Tremere perfected his claim to the mules as against Barfield; for, in the absence of notice of some sort that Barfield had reserved title in the mules, Tremere had a right to assume that Cooper was the absolute and unconditional owner of the property.

It is contended, however, that Tremere occupied no better position than that of a judgment creditor whose judgment was obtained prior to the conditional sale. The statute provides that, in order to be good against third persons, the reservation of title must be recorded. This has been construed to apply only to third persons who have parted with something on the faith of the apparent ownership of the vendee, upon the theory that it would be inequitable to permit a holder of a pre-existing debt to obtain satisfaction out of property which the debtor did not really own. As to such a creditor it has been said he "is in no wise affected by the non-record of this conditional sale. No right has accrued to him between the making of the conditional sale and the record of the same. He is not hurt by its non-record; and, as to him, it is the same as if the sale had been duly recorded." *Conder* v. *Holleman,* 71 *Ga.* 93; *Taylor* v. *National Cash Register Co.,* 8 *Ga. App.* 283 (68 S. E. 1009). Applying this principle, it was held in *Fountain* v. *Fountain,* 7 *Ga. App.* 361 (66 S. E. 1020), that where a debtor executed a mortgage on a growing crop, the mortgage, although not recorded, would prevail over a creditor whose debt was in existence at the time the mortgage was executed and who had not parted with anything on the faith of the cropper's apparent unencumbered ownership of the property. It appears, from the evidence, that the original note executed by Cooper to Tremere was not due, and that, on the faith of Cooper's apparent unconditional ownership of the

mules which he had bought from Barfield, Tremere surrendered a mortgage which was a valid lien on the property which Cooper had sold and out of which Tremere could have made his debt. He is thus equitably in the same position as if the bill of sale had been executed to secure a debt which came into existence contemporaneously with the making of the paper. Tremere, having surrendered his security on the faith of Cooper's apparent ownership, is as much entitled to take advantage of Barfield's failure to record his reservation of title as if he had made a loan of money to Cooper and taken a bill of sale to secure its payment. In our opinion, Tremere is well within the reason and equity of the rule, and the court erred in directing a verdict in Barfield's favor.

*Judgment on the main bill of exceptions reversed; on the cross-bill affirmed.*